Joshua B. Swigart, Esq. (SBN 225557)
josh@westcoastlitigation.com
David J. McGlothlin, Esq. (SBN 253265)
david@westcoastlitigation.com
**Hyde & Swigart**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Ryan L. McBride, Esq. (SBN 297557)
ryan@kazlg.com
**Kazerouni Law Group**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile:   (800) 520-5523

*Class Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Robert A. Pastor; Scott M. Van Horn; Regina M. Florence; and William E. Florence III;** on behalf of himself and all others similarly situated**,**<br><br>Plaintiff,<br><br>v.<br><br>**Bank of America, N.A.,**<br><br>Defendant. | **Case No.: 3:15-cv-03831-VC**<br><br>**CLASS ACTION**<br><br>**Memorandum of Points and Authorities in Support of Class Counsel's Motion for Award of Attorneys' Fees, Costs, and Incentive Award**<br><br>Hearing:<br>Date: January 11, 2018<br>Time: 10:00 am<br>Dept.: Courtroom 4 (17th Floor)<br>**Judge: Hon. Vince Chhabria** |

## **TABLE OF CONTENTS**

I.   Introduction...........................................................................................1

II.  Litigation and Factual Background .................................................1

III. LEGAL STANDARD ......................................................................3

IV.  Argument ..........................................................................................4

1.   The requested fees resulted from an agreement reached through arm's length negotiations..................................................................................4

2.   The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method ...........................................................................6

a.   Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases ....................................7

b.   The risks of litigation support the requested fees ....................8

c.   The skill required and quality of work performed support the requested fees ..................................................................................9

d.   Class Counsels' undertaking of this Action on a contingency-fee basis supports the requested fees ........................................................10

3.   The requested fee is reasonable, fair, and justified under the lodestar method ................................................................................................12

4.   The Number Of Hours Expended Are Reasonable ....................13

5.   Class Counsel's Hourly Rates are Reasonable...........................15

6.   The Requested Litigation Costs Are Fair And Reasonable.......16

7.   The  $5,000  Incentive  Award  Sought  For  The  Named  Class Representatives Are Reasonable And Should Be Approved...........................17

V.   Conclusion.....................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Barel v. Bank of America*, 255 F.R.D. 393, 402 (E.D. Pa. 2009)..........................8

*Blum v. Stevenson*, 465 U.S. 886, (1994) ..............................................15

*Bryant v. TRW, Inc., 689 F.2d 72, 79 (5th Cir. 1982)*...........................................3

*Davis v. City and County of San Francisco*, 976 F.3d 1536 (9th Cir. 1992) ........15

*Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) ........5

*Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532.............14

*Duncan v. JPMorgan Chase Bank, N.A.  W.D. Tex. Case No. 5:14-cv-00912-FB*
..........................................................................................................8

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002)......13

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ..............14

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)
..........................................................................................................12

*Gross v. Washington Mutual Bank, F.A.,* 2006 WL 318814, at *6 (S.D.N.Y. Feb. 26, 2006)..........................................................................................18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)..........................5

*Hartless v. Clorox Co.*, 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), *aff'd in part*, 473 F. Appx. 716 (9th Cir. 2012) ...................................................16

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). ..............................................4

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)...............6

*In re Assicurazioni Generali S.p.a. Holocaust Insurance,* 2007 WL 601846, at *3 (S.D.N.Y. Feb. 27, 2007)....................................................................18

*In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 ......................................14

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...........3

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........17

*In re Linerboard*, 2004 U.S. Dist. LEXIS 10532, 2004 WL 1221350...............14

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362  (N.D. Cal. 1996)..........17

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010)............................3

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) .............6

*In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 307 (3d Cir. 2005) ....12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299...............10

*Keener v Sears*, 03-cv-1265 (C.D. Cal) ................................................................8

*Hensley v. Eckerhart,* 461 U.S. 424 (1983)..........................................................7

*Kerr v, Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)...........................13

*King v. United SA FCU*, SA-09-CV-0937-NN .....................................................7

*Lundell v. Dell, Inc.*, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) .....................4

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009)...................................................................................................................4

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) ...........................................17

*Nienaber v. Citibank*, No. Civ. 04-4054 (S.D.)....................................................8

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ...........................................................................4

*Omnivision*, 559 F. Supp. 2d at 1046-47 ..............................................................8

*People United for Children, Inc. v. City of New York*, 2007 WL 582720, at *2 (S.D.N.Y. Feb. 26, 2007)...................................................................................19

*Perry v. FleetBoston Corp.*, 229 F.R.D. 105, 110 (E.D. Pa. 2005).......................8

*Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ........................................12

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .....................18

*Rutti v. Lojack Corp.*, 2012 U.S. Dist. LEXIS 107677, 19 Wage & Hour Cas. 2d (BNA) 938, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ..............................16

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010).................................................................................................5

*Serrano v. Unruh*, 32 Cal. 3d 621(1982)..............................................................15

*Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, *60 (S.D. Cal. Nov. 5,

2012) ..............................................................................................16

*Sheppard v. Consolidated Edison Co. of NY*, 2002 WL 2003206, at*6, n.9

   (E.D.N.Y. Aug. 1, 2002) ..............................................................19

*Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ......................9

*Steiner v. Am. Broad. Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) .............14

*Vizcaino v. Microsoft Corp.,* "courts have routinely enhanced the lodestar to

   reflect the risk of non-payment in common fund cases." 290 F.3d 1043, 1051

   (9th Cir. 2002) ..............................................................................14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-1050 (9th Cir. 2002) ...6

*Vizcaino*, 290 F.3d at 1048 ..............................................................................8

## STATUTES

15 U.S.C. § 1681n ..............................................................................................1

15 U.S.C. § 1681o(a)(2) ....................................................................................2

Fed. R. Civ. P. 23(h) ........................................................................................2

Fed. R. Civ. P. 30(b)(6) ....................................................................................9

## I.     INTRODUCTION

Plaintiffs Robert A. Pastor, Regina Florence, William Florence, and Scott Van Horn (collectively referred to as "Plaintiffs") move the Court for an award of attorneys' fees, costs, and incentive payments as part of this preliminary approved class action settlement (*see* Dkt. No. 55)

The Settlement (*see* Dkt. No. 46-5) creates a common fund in the amount of $1,645,000.00. [Settlement Agreement, ¶ 32]. Each Class member to make a claim will receive a pro-rata share of the common fund. [Settlement Agreement, ¶ 69]. Pursuant to the terms of the Settlement Agreement, Class Counsel shall move the Court for an award of attorneys' fees ("Motion for Fees") and costs not to exceed 30% of the amount actually contributed to the common fund. [Settlement Agreement, ¶ 53]. Any award of fees and costs approved by the Court shall be paid from the common fund three days after the Effective Date. Court approval of Class Counsel's attorney's fees and costs is not a condition of the settlement. [*Id.*]. Additionally, Plaintiffs seek an incentive award of $5,000 for each named class representative as compensation for their investment of time, effort, and resources on behalf of the Class.

Plaintiffs now seek an order awarding class counsel $411,250 in attorneys' fees, which represents 25% of the common fund. Plaintiff further requests $19,023.42 in expenses. This requested fee amount is fair and reasonable when compared to the settlement value as well as the lodestar incurred by Class Counsel.

## II.     LITIGATION AND FACTUAL BACKGROUND

Plaintiff Pastor filed the initial class action complaint on August 21, 2015 asserting violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681n [See Dkt. No. 1]. Plaintiffs assert that they are former customers of Bank of America, N.A. ("BANA"), who was included as a creditor in each Plaintiffs'

1

bankruptcy in the U.S. Bankruptcy Court, District of Nevada. [Plaintiff's First Amended Complaint, Dkt. No. 48 ("FAC"), ¶¶ 23-24, 40-41, & 52-53.  Each Plaintiff learned by reviewing their credit report that BANA had still conducted soft pulls of their credit file after the bankruptcy discharge date for the alleged purpose of conducting account reviews.  FAC ¶¶ 29, 46 & 59.  Plaintiffs allege that they did not conduct any business nor incur any additional financial obligations with BANA since the date of the discharge of their bankruptcies. FAC ¶¶ 31& 58. In the First Amended Complaint, Plaintiffs alleged that BANA did not have a permissible purpose to pull their credit file information from their credit reports because they did not give their consent and their debt had been discharged in Bankruptcy on the dates that BANA accessed their credit files. FAC ¶¶ 31, 46 & 59.

BANA vigorously denies all claims asserted in the Action and denies all allegations of wrongdoing and liability.  BANA further maintains that even if the credit pull was impermissible under the FCRA, it was not the result of willful conduct, and so neither Plaintiffs nor the class members were entitled to statutory damages.

After completion of some initial discovery, and once the parties were full apprised of the strengths and weaknesses of their respective cases, on July 26, 2016 the parties participated in a mediation conducted by Honorable Edward A. Infante (Ret.) that culminated with the filing of the Motion for Preliminary Approval. This Court approved the Motion for Preliminary Approval on July 7, 2017.  The Agreement, as preliminarily approved by the Court, recognizes the benefit conferred upon the class by Plaintiffs and Class Counsel, and acknowledges Plaintiffs right to seek recovery for their reasonable attorneys' fees and expenses. In this regard, the Agreement provides that Plaintiffs may petition the Court for an award of attorneys' fees up to 30% of the common fund

plus reasonable expenses.  This requested fee amount is fair and reasonable when compared to the settlement value as well as the lodestar incurred by Class Counsel.

### III.   **LEGAL STANDARD**

Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h). Pursuant to the terms of the Settlement Agreement in this case, Class Counsel shall move the Court for an award of attorneys' fees and costs not to exceed 30% of the amount actually contributed to the common fund.  [Settlement Agreement, ¶ 53].

Additionally, Plaintiffs are entitled to attorneys' fees pursuant to the FCRA. The FCRA provides that in "the case of any successful action to enforce any liability under this section," the consumer shall recover "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681o(a)(2). The purpose of awarding attorney fees under the FCRA is to encourage enforcement of the statute by consumers, acting as "private attorneys general." *See*, *Bryant v. TRW, Inc., 689 F.2d 72, 79 (5th Cir. 1982)*

In common fund cases such as this one, courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund; or, (2) lodestar plus a risk multiplier. *Staton*, 327 F.3d at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Class Counsel maintain the request for attorneys' fees is reasonable based solely upon the extensive arm's length formal negotiations that serve as independent confirmation of the fairness of the settlement, including attorneys'

fees.  *See Hanlon*, 150 F.3d at 1029.  The requested fees are also fully supported under the percentage-of-the-fund and lodestar approach, which Class Counsel offer as an additional and optional means of cross-checking the requested fees.

## IV.   ARGUMENT

"Once a party has established that he is entitled to attorneys' fees, '[i]t remains for the [] court to determine what fee is 'reasonable.'"  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Here, as established below and in the attached Declarations of Counsel, payment of the requested attorneys fees is reasonable under the both the percentage-of-the-fund and lodestar approach.

### 1. THE REQUESTED FEES RESULTED FROM AN AGREEMENT REACHED THROUGH ARM'S LENGTH NEGOTIATIONS

While attorneys' fee provisions included in class action settlements are subject to the determination of whether the provision is fundamentally fair, adequate and reasonable, the Ninth Circuit has opined that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit <u>must be limited to</u> the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); (emphasis added); *see also, Lundell v. Dell, Inc.*, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).

In *Hanlon*, the Ninth Circuit went on to state that where settlement terms, including attorneys' fees, are reached through formal mediation, the Court may rely upon the mediation proceedings "as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class."  *Hanlon*, 150 F.3d at 1029.  *See also Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("the participation of an independent

mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," which helped to establish that the proposed settlement was noncollusive). *See also* 2 McLaughlin on Class Actions, § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion").

Here, and as previously stated in Plaintiffs' Motion For Preliminary Approval of Class Action Settlement and Certification of Settlement Class (Dkt. 46, the "Preliminary Approval Motion"), which this Court granted on July 7, 2017 (Dkt. No. 55), the settlement resulted from extensive arm's length negotiations.   Specifically, the Parties attended mediation facilitated by the Honorable Edward Infante (Ret.).   As a result of the mediation sessions, and with the experienced guidance of Judge Infante, the Parties agreed to settle this Action, subject to further negotiations and Court approval.

Under these circumstances, the Court may give deference to the mediation proceedings and the judgment of the Parties regarding the reasonableness of fees. The arm's length negotiations, especially those before Judge Infante (Ret.), serve as "independent confirmation" of the reasonableness of the settlement's terms on which Plaintiffs based the request for attorneys' fees, costs, and incentive award sought by this Motion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).   Additionally, the requested fee is wholly supported by the percentage-of-the-fund and lodestar methods, which the Court may employ as a means of assessing the reasonableness of the requested fee.

## 2. THE REQUESTED FEES ARE REASONABLE, FAIR, AND JUSTIFIED UNDER THE PERCENTAGE-OF-THE-FUND METHOD

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-1050 (9th Cir. 2002).

The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Vizcaino*, 290 F.3d at 1047. "However, in most common fund cases, the award exceeds that [25%] benchmark."[1] *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)). *See also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value"). "[A]bsent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048, citing *In re Activision Sec. Litig.,* 723 F.Supp. at 1378.

Attorneys' fees are often paid from the common fund, thereby reducing class members' recovery, as is this case here. Class Counsel's request for attorneys' fees in the amount of $411,250 equates to 25% of the $1,645,000 Settlement Fund, which is reasonable considering the Ninth Circuit's benchmark and more recent precedent, as well as the risks and results obtained in this Settlement.   This fee request is unopposed by Bank of America. Also, the

---

[1] In "cases under $10 Million, the awards more frequently will exceed the 25% benchmark." *Morales v. Stevco, Inc*., 2013 U.S. Dist. LEXIS 41799, *11 (E.D. Cal. Mar. 22, 2013) (citing *Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, *36 (E.D. Cal. Sep. 1, 2011)).

Settlement Class Members were adequately apprised that Class Counsel would be seeking up to 30% of the Settlement Fund in attorneys' fees in the class notice.

In addition, the fee request is fully supported by the factors enunciated in *Vizcaino* including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases.

### a. CLASS COUNSEL HAVE OBTAINED EXCELLENT RESULTS FOR THE CLASS IN COMPARISON TO AWARDS MADE IN SIMILAR CASES

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). Standing alone, this factor supports Class Counsel's fee request.

The Settlement secured by Plaintiffs and Class Counsel provides a superior recovery for Settlement Class Members as compared to similar FCRA cases, despite the uncertainty of recovery in FCRA impermissible pull class actions. The Agreement provides for $1,645,000 in recovery for the approximately 580,000 Settlement Class Members. After deducting attorneys' fees and costs, a service awards to Plaintiff, and costs of notice and claims administration, every Class Member who makes a timely and valid claim will be entitled to a *pro rata* distribution of the Settlement Fund.

Significantly, the Class Members' anticipated recovery here is greater than the results obtained in other FCRA class action settlements.  Only two other FCRA impermissible access account review settlements have been reached in the United States wherein a common fund was created.  The first was a smaller case.  *See King v.*

*United SA FCU*, SA-09-CV-0937-NN (W.D. Tex. Final Settlement Approved Oct. 8, 2010, Dkt # 31). The second was the *Duncan v. JP Morgan Chase Bank, N.A.* case where the court agreed to an $8.75 million settlement amounting to about $1.00 per class member. *Duncan v. JPMorgan Chase Bank, N.A.  W.D. Tex. Case No. 5:14-cv-00912-FB*. In this case, the cash payment available to class members in this settlement is significantly greater per person than the *Duncan* case and is approximately $3.05 per class member.

All other known class action account review cases that have settled have provided non-cash relief, including short term credit monitoring, credit scores, or other "coupon-type" relief. See, e.g., *Barel v. Bank of America*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) (credit report monitoring); *Nienaber v. Citibank*, No. Civ. 04-4054 (S.D.) (credit report monitoring); *Perry v. FleetBoston Corp.*, 229 F.R.D. 105, 110 (E.D. Pa. 2005) (two credit reports and scores); *Keener v Sears*, 03-cv-1265 (C.D. Cal) (Coupon for Sears store products).

### b. THE RISKS OF LITIGATION SUPPORT THE REQUESTED FEES

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).

In litigating this matter, Plaintiffs have identified significant burdens that each Class Member would bear in the event that Plaintiffs and BANA's settlement is not approved.  These challenges include the difficulties in determining whether BANA's actions in obtaining the credit report were negligent and/or willful and what actual damages, if any, were sustained by class members. These significant risks make the global class settlement obtained by Plaintiffs all the more beneficial to the Class Members while also providing

finality for BANA.

It is possible that the issue of whether BANA acted negligently or willfully will have to be determined on a case-by-case basis. As discussed above, each class member will have to prove whether BANA acted negligently or willfully when BANA accessed that class member's credit report. Each class member would have to prove what level of involvement BANA had in the class member's bankruptcy and what level of knowledge BANA had that the account in question had been discharged through bankruptcy. This would be extremely time-consuming for the class member, BANA, and especially for the court system.

Additionally, all previous settlements reached on FCRA impermissible access account review were prior to the Supreme Court's ruling in *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). Therefore, if this case were to proceed, Plaintiffs would have to prevail over Defendant's challenges regarding standing. Consequently, the risks of continued litigation not only depicts the high degree of results obtained for the Class, but also further support the reasonableness of the requested fees.

### c. THE SKILL REQUIRED AND QUALITY OF WORK PERFORMED SUPPORT THE REQUESTED FEES

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047. Class Counsel are experienced class action litigators who have been appointed "class counsel" in numerous consumer class actions. Class Counsel have successfully prosecuted numerous complex consumer class actions, and have secured noteworthy recoveries for those classes. *See* Declaration of Joshua B. Swigart ("Swigart Decl."), ¶¶ 13-19; Kazerounian Decl. ¶¶ 13-21; *see also* Declaration of David J. McGlothlin ("McGlothlin

Decl."), ¶¶ 13-19.  Class Counsel's proven track record demonstrates not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions.

In the present case, Class Counsel performed significant factual investigation prior to bringing the action, conducted extensive written discovery, and took a Fed. R. Civ. P. 30(b)(6) confirmatory deposition. Class Counsel participated in protracted negotiations including a mediation before Judge Infante (Ret.), which ultimately secured a nationwide settlement for the benefit of the Class. Kazerounian Decl., ¶ 5.

FCRA class action litigation is often complex. In addition to keeping themselves apprised of pertinent case law and agency rulings, Mr. Kazerounian and Mr. Swigart have lectured on consumer law issues on several occasions. *See* Kazerounian Decl., ¶¶ 22-38; Swigart Decl., ¶ 20. Thus, Class Counsels' skill and expertise reflected in the relatively prompt and significant Settlement, supports the requested fees.

### d. CLASS COUNSELS' UNDERTAKING OF THIS ACTION ON A CONTINGENCY-FEE BASIS SUPPORTS THE REQUESTED FEES

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work.  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery. *See* Kazerounian Decl., ¶ 4; Swigart Decl., ¶ 4; McGlothlin Decl., ¶ 4. In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money by, among other things, (1) investigating the action; (2) coordinating and consolidating other putative class actions into this single action; (3) conducting extensive discovery; (4) negotiating the settlement; (5) overseeing administration of the Settlement; and (6) responding to Class Member inquiries. Class Counsel expended these resources despite the risk that Class Counsel may never be compensated.

Plaintiff's counsel here have incurred $19,023.42 in costs and spent 520.4 hours litigating this action. Kazerounian Decl., ¶¶ 7-9; Swigart Decl¶¶ 7-9; McGlothlin Decl., ¶¶ 7-9; McBride Decl., ¶¶ 7-9. Thus, Plaintiff's counsels' "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047.

As articulated above, the percentage-of-the-fund method is the preferred and most widely used method for determining attorneys' fees in a common fund case. The requested fees are fully supported by the factors enunciated by *Vizcaino* and is commensurate with the excellent results obtained for the Class and is comparable or in excess of awards in other FCRA cases, namely *Duncan v. JPMorgan Chase Bank, N.A.*.

While the requested fees are fully supported by the percentage-of-the-fund method, it should again be noted that the application of the percentage-of-the-fund method is optional and may be applied at the Court's discretion. In addition, the Court may also apply the lodestar method as another optional means of cross-checking the requested fees.

3. **THE REQUESTED FEE IS REASONABLE, FAIR, AND JUSTIFIED UNDER THE LODESTAR METHOD**

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050.  A cross-check, however, is *optional*.  *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class," there is no need "to conduct a lodestar cross-check").  If the Court chooses to perform such a cross-check in this matter, it will confirm that an approximately 25% of $1,645,000 common fund, or $411,250 in attorneys fees, is reasonable. Primary reliance should be placed on the percentage-of-the-fund method in common fund cases such as this one. *See In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 307 (3d Cir. 2005)) ("the lodestar cross-check does not trump the primary reliance on the percentage of common fund method").[2]

The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate.  *Hanlon*, 150

---

[2] *See Silber and Goodrich, Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 RevLitig 525, 534 (1998) (the percentage approach avoids numerous drawbacks of the lodestar approach and is preferable because "the attorneys will receive the best fee when the attorneys obtain the best recovery for the class. Hence, under the percentage approach, the class members and the class counsel have the same interest — maximizing the recovery of the class."). *See also In Re Activision Securities Litigation*, 723 F. Supp. 1373, 1378-1379 (N.D. Cal. 1989) (holding that the percentage method is preferred over the lodestar method and finding it encourages efficiencies and early resolution); *In re Omnivision Techs, Inc*., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases appears to be dominant."); *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.").

F.3d at 1029.  Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys.  *See Kerr v, Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[3]

### 4.  THE NUMBER OF HOURS EXPENDED ARE REASONABLE

The accompanying declarations of Class Counsel and senior associate attorney set forth the hours of work and billing rates used to calculate their lodestar.  Plaintiffs' attorneys' hours are summarized below:

| PERSON: | RATE: | HOURS: | TOTAL: |
|---|---|---|---|
| ABBAS KAZEROUNIAN | $605 | 141.1 | $85,365.50 |
| JOSHUA SWIGART | $605 | 87.4 | $52,877.00 |
| DAVID MCGLOTHLIN | $450 | 231.9 | $104,355.00 |
| RYAN MCBRIDE | $300 | 60 | $18,000.00 |
| TOTAL: | | **520.4** | **$260,597.50** |

As described in the accompanying declarations, Plaintiffs' attorneys have devoted a total of 520.4 hours[4] to this litigation thus far, and have a total lodestar

---

[3] The risk inherent in contingency representation is a critical factor.  The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when...there is evidence that the case was risky."  *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. 2007).

[4] Plaintiff's counsel provide in their respective declarations a summary of major

$260,597.50, which represents a reasonable multiplier of approximately 1.578. *See* Kazerounian Decl., ¶¶ 7 and 8; Swigart Decl., ¶¶ 7 and 8; McGlothlin Decl. ¶¶ 7 and 8; McBride Decl. ¶¶ 7 and 8.

A multiplier of between 4 and 5 in complex cases is not uncommon. *See In re Linerboard*, 2004 U.S. Dist. LEXIS 10532, 2004 WL 1221350, at *16 (noting that "during 2001-2003, the average multiplier approved in common fund class actions was 4.35") (citation omitted); *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier); *Steiner v. Am. Broad. Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving multiplier of 6.85). As the Ninth Circuit noted in *Vizcaino v. Microsoft Corp.,* "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." 290 F.3d 1043, 1051 (9th Cir. 2002). In *Viczaino*, the court analyzed a table of multipliers that had been used in other cases and approved a multiplier of 3.65 for that case. *Id.*

The 520.4 attorney hours include additional time that Class Counsel will likely spend going forward in seeking final approval of, and implementing the Settlement, including assisting Class Members with claims and overseeing claims administration, and preparing and filing the motion for final approval of class action settlement. *See* Kazerounian Decl., ¶ 8 (30 additional hours estimated);

---

tasks performed and time expended. *See Sablan v. Department of Finance of Com. of Northern Mariana Islands*, 856 F.2d 1317 (9th Cir. 1988) (attorney-fee award need not be preceded by an evidentiary hearing when the record and supporting affidavits are sufficiently detailed to provide an adequate basis for calculating the award and the material facts necessary to calculate the award are not genuinely in dispute).  Detailed billings are available upon request by the Court.

14

Swigart Decl., ¶ 8 (10 additional hours estimated); McGlothlin Decl. ¶ 8 (30 additional hours estimated); McBride Decl. ¶ 8 (10 additional hours estimated).

Class Counsel's lodestar with a 1.578 multiplier is therefore reasonable. Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case.  In this regard, tasks were reasonably divided among firms to ensure avoiding the replication of work.  Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff. Class Counsel did not include hours incurred by paralegals and other support staff in their fees request. *See* Kazerounian Decl., ¶ 10 Swigart Decl., ¶ 10; McGlothlin Decl., ¶ 10; McBride Decl., ¶ 10.

### 5.  CLASS COUNSEL'S HOURLY RATES ARE REASONABLE.

Similarly, Class Counsels' hourly rates are reasonable. In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895, n.11 (1994).  *See also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); and, *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982).  Class Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here. *See* Kazerounian Decl., ¶¶ 13-39; Swigart Decl., ¶¶ 13-21; McGlothlin Decl., ¶¶ 13-26.

Mr. Kazerounian is an adjunct professor at California Western School of Law teaching a consumer law course. Both Mr. Kazerounian and Mr. Swigart have been approved for an hourly rate of $605. Kazerounian Decl., ¶ 15; Swigart Decl., ¶ 15. Mr. McGlothlin, a partner at Hyde & Swigart, is also very

experienced in litigating consumer cases, including class actions, and seeks an hourly rate of $450. McGlothlin Decl., ¶¶ 13-26.

The billing rate for the partners (i.e., Mr. Kazerounian, Mr. Swigart and Mr. McGlothlin) is well within the normal range of fees charged by firms in Southern California for partner work. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), *aff'd in part*, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates in the San Diego area of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal) (finding partner rates of $750 to $475 and associate rates of $425 to $275 reasonable).

Additionally, associate Ryan McBride of Kazerouni Law Group, APC, who has contributed much to this litigation, has significant experience in litigating consumer actions, which justifies his hourly rate of $300. *See* McBride Decl., ¶¶ 13-19. According to the Court in *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, *60 (S.D. Cal. Nov. 5, 2012) ("[t]he National Law Journal data reveals that rates at six national defense firms with San Diego offices averaged between $550 and $747 per hour for partners and $346 and $508 per hour for associates."); *Rutti v. Lojack Corp.*, 2012 U.S. Dist. LEXIS 107677, 19 Wage & Hour Cas. 2d (BNA) 938, 2012 WL 3151077 (C.D. Cal. July 31, 2012) (approving hourly rates of $650 and $750 in FLRA class action).

Therefore, Class Counsels' hourly rates and combined lodestar of $260,597.50 with a multiplier of 1.578 is a reasonable.

## 6. THE REQUESTED LITIGATION COSTS ARE FAIR AND REASONABLE

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396

U.S. 375, 391-392 (1970).   The significant litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).   Based upon the discussion herein, Class Counsel believe that the costs incurred in this matter are fair and reasonable.

Throughout the course of this litigation, Class Counsel had to incur costs totaling $19,023.42 Kazerounian Decl. ¶ 9; Swigart Decl., ¶ 9.  These costs were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that Class Counsel would ever be repaid.  Most of the costs were incurred for travel to court hearings, the mediation and depositions.[5]

In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, the request for (current) costs of $19.023.42 is reasonable.  Class Counsel will likely incur additional costs as this case moves to the final approval stage.

### 7. THE $5,000 INCENTIVE AWARD SOUGHT FOR THE NAMED CLASS REPRESENTATIVES ARE REASONABLE AND SHOULD BE APPROVED.

As the Ninth Circuit has recognized, "named Plaintiffs, as opposed to designated class members who are not named Plaintiffs, are eligible for reasonable incentive payments."  *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases").   Such awards are intended to compensate class

---

[5] Counsel are willing to provide itemized costs records upon the Court's request.

representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id*. Small incentive awards, such as those requested here, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.

As stated, the Agreement calls for a payment of $5,000.00 to each of the named class representatives as an incentive award for their expenditure of time, effort, and resources in undertaking this action on behalf of the class.

On August 21, 2015 (Dkt No. 1), Plaintiff Robert Pastor filed the initial complaint against Defendant Bank of America in this matter. Plaintiffs Scott Van Horn, Regina Florence and William Florence III filed separate putative class claims against Defendant in the U.S. District Court, District of Nevada (case nos. 2:16-cv-00362 & 2:16-cv-00365, respectively.) The parties then entered into a class settlement encompassing all three putative class actions The parties then consolidated all claims into this case by filing this First Amended Complaint naming all four individuals as plaintiffs and class representatives (See Dkt. No. 44).

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotations omitted). "A powerful basis for separate awards to named plaintiff in class action settlements is the need to reimburse them for specific expenses they have incurred, including out-of-pocket costs of asserting the litigation, the use of leave time in order to attend depositions and other such costs." *Sheppard v. Consolidated Edison Co. of NY*, 2002 WL 2003206, at*6, n.9 (E.D.N.Y. Aug. 1, 2002). Here, this entire litigation would not have been possible without Pastor's and the other named plaintiffs' involvement and cooperation with Class Counsel.

The $5,000 incentive award amount is more than reasonable and in line

with similar incentive awards routinely granted by courts in class action cases. *See*, e.g., *People United for Children, Inc. v. City of New York*, 2007 WL 582720, at *2 (S.D.N.Y. Feb. 26, 2007) (approving class action settlement that called for incentive awards to class action plaintiffs ranging from $10,000 to $15,000); *In re Assicurazioni Generali S.p.a. Holocaust Insurance*, 2007 WL 601846, at *3 (S.D.N.Y. Feb. 27, 2007) (awarding each of the named representatives incentive award of $5,000 as part of class action settlement approval); *Gross v. Washington Mutual Bank, F.A.,* 2006 WL 318814, at *6 (S.D.N.Y. Feb. 26, 2006) (awarding class plaintiff $5,000 incentive award as part of class action settlement approval).

The $5,000 incentive award, being unopposed, fair and reasonable, and in line with payments awarded in other class actions, should also be approved.

## V.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' motion for an award of attorneys' fees in the total amount of $411,250 (25% of the Settlement Fund), litigation costs of $19,023.42, and an incentive or service award in the amount of $5,000 to each of the four Class Representatives.

Date: October 12, 2017                      **Hyde & Swigart**

                                            By: /s/ David J. McGlothlin
                                            David J. McGlothlin
                                            Class Counsel