1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joshua B. Swigart, Esq. (SBN 225557)
josh@westcoastlitigation.com
David J. McGlothlin, Esq. (SBN 253265)
david@westcoastlitigation.com
**Hyde & Swigart**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Ryan L. McBride, Esq. (SBN 297557)
ryan@kazlg.com
**Kazerouni Law Group**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile:   (800) 520-5523

*Class Counsel*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Robert A. Pastor; Scott M. Van Horn; Regina M. Florence; and William E. Florence III;** on behalf of himself and all others similarly situated**,**<br><br>Plaintiff,<br><br>v.<br><br>**Bank of America, N.A.,**<br><br>Defendant. | Case No.: 3:15-cv-03831-VC<br><br>**CLASS ACTION**<br><br>**Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement**<br><br><u>Hearing</u>:<br>Date: August 16, 2018<br>Time: 10:00 am<br>Dept.: Courtroom 4 (17th Floor)<br>Judge: Hon. Vince Chhabria |

HYDE & SWIGART
Consumer Protection Attorneys

# Table of Contents

I. INTRODUCTION ................................................................................................. 6

II. PROCEDURAL HISTORY ................................................................................ 7

III. THE FCRA AND THE CLASS ALLEGATIONS ........................................ 10

IV. SETTLEMENT ................................................................................................ 12

   A. THE FAIRNESS HEARING ............................................................................ 13

   B. ATTORNEYS' FEES, COSTS APPLICATION, AND SERVICE AWARDS ...................... 13

   C. CLASS ACTION SETTLEMENT TERMS ............................................................ 14

      1. *Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class* .......................... 14

V. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL .............................. 15

   A. CAFA NOTICE ......................................................................................... 15

   B. MAIL NOTICE .......................................................................................... 15

   C. PUBLICATION NOTICE ................................................................................ 17

   D. DETAILED NOTICE POSTED ON THE SETTLEMENT WEBSITE ............................. 17

   E. INTERACTIVE VOICE RESPONSE .................................................................. 18

   F. CLAIMS PROCEDURE, INCLUDING EXPENSES, AND CLAIMS RECEIVED ................ 18

VI. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED .......................................... 21

   A. THE SETTLEMENT SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23 ............ 21

      i. The members of the Settlement Class are sufficiently numerous. .................. 21

      iii. The requirement of typicality is satisfied. ............................................... 22

      iv. The requirement of adequate representation is satisfied. ............................ 22

      v. The Action meets the requirements of Rule 23(b)(3). ................................. 23

   B. THE SETTLEMENT SHOULD BE FINALLY APPROVED BY THE COURT. .................... 24

      1. *The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Further Litigation* .................................................................................... 25

VII. CONCLUSION .............................................................................................. 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HYDE & SWIGART
Consumer Protection Attorneys

1

## Table of Authorities

2

3

### CASES

4  *Banga v. Experian Info. Solutions, Inc.*, 473 F. App'x 699 (9th Cir. 2012)------------------------ 26

5  *Barel v. Bank of America*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) -------------------------------------- 30

6  *Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416, *12 (N.D. Cal. Apr. 15, 2015)-------- 26

7  *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)------------------------------ 25

8  Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979)*-------------------------------------- *32*

9  *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) -------------------------------- 20

10  *Chase v. JPMorgan Chase Bank, N.A.*, W.D. -------------------------------------------------------------- 29

11  *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015)------------------------------ 33

12  *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.3d 225, 232 (7th Cir. 1983) ------------------------ 21

13  *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012)------------------------------ 14

14  *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 572 (D.N.J. 2010) ------------------------------ 14

15  *Dukes v. Wal-Mart, Inc.*, 774 F.3d 1214, 1225 (9th Cir. 2007)---------------------------------------- 20

16  *Duncan v. JPMorgan Chase Bank, N.A.*, 2016 -------------------------------------------------------------- 29

17  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ------------------------------ 24

18  *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) -------------------- 31

19  *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) -------------------- 31

20  *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943-44 (N.D. Cal. 2013) --------------------------- 29

21  *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982) -------------------------------------------------- 22

22  *Germain v. Bank of Am., N.A.*, No. 13-cv-676, 2014 U.S. Dist. LEXIS 158874, at *13-15 (W.D. Wis. Nov. 7, 2014)-------------------------------------------------------------------------------------------------- 27

23  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)------------------------------------------------------ 23

24  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) --------------------------------------- 23

25  *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) ------------------------------------------------------------------------------------------------------ 30

26  *In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ---------- 18

27  *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ------------------ 24

28

*In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) -------------------- 28

*In re Heartland*, 851 F. Supp. 2d at 1059 ------------------------------------------------------------ 22

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) Dist. LEXIS 121641 (N.D. Ill. 2014) ------------------------------------------------------------------------------------------ 30

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 ---------------------------------------------------- 28

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985) -------------- 23

*In re Warner Communications*, 618 F. Supp. at 745 -------------------------------------------------- 32

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011) ------------------------------------------------------------------------------------- 24

*Kazemi v. Payless Shoesource, Inc.*, 09-cv-5142 (N.D. Cal.) ------------------------------------- 30

*Keener v Sears*, 03-cv-1265 (C.D. Cal) -------------------------------------------------------------- 30

*King v. United SA Fed. Credit Union*, 744 F.Supp.2d 607 (W.D. Tex. 2010) ---------------------- 30

*Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-1319 (11th Cir. 2009) ---------- 26

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) -------------------------------------- 29

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998) --------------------- 32

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ---- 24

*M. Berenson Co.*, 671 F. Supp. ----------------------------------------------------------------------- 32

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) -------------- 24

*Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ----------------- 28

*Nienaber v. Citibank*, No. Civ. 04-4054 (S.D.) ---------------------------------------------------- 30

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982) ------------------------------------------------------------------------------- 23

*Perry v. FleetBoston Corp.*, 229 F.R.D. 105, 110 (E.D. Pa. 2005) -------------------------------- 30

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ------------------------------- 24

*Rose v. Bank of Am. Corp.*, 2014 U.S. ------------------------------------------------------------- 30

*Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994) --------------------------------------------- 30

*Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016) ----------------------------------------------------- 26

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) ------------------------------------------ 23

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) 33

1   *Stemple*, 2016 U.S. Dist. LEXIS 157207 ------------------------------------------------------ 33

2   Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)------------------------------ 24

3   West Virginia v. Chas. Pfizer & Co., 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)----------------- 25

4   *Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) ---- 31

5                               STATUTES

6   15 U.S.C. § 1681n-------------------------------------------------------------------------------------6

7   15 U.S.C. § 1681n(a)(1)(A)----------------------------------------------------------------------- 27

8   *15 U.S.C. §1681b(a)(3)(A)*---------------------------------------------------------------------9

9

10                          OTHER AUTHORITIES

11   2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth §

12       30.42 --------------------------------------------------------------------------------------- 32

13   David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three*

14       *Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and*

15       *Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ------------------------------------------6

16

17

18                                 RULES

19   Fed. R. Civ. P. 23(a)(2)-------------------------------------------------------------------------- 20

20   Fed. R. Civ. P. 23(a)(3)-------------------------------------------------------------------------- 21

21   Fed. R. Civ. P. 23(a)(4)-------------------------------------------------------------------------- 21

22   Fed. R. Civ. P. 23(b)(3) ------------------------------------------------------------------------- 13

23   Fed. R. Civ. P. 23(e)(1)(C)---------------------------------------------------------------------- 23

24

25

26

27

28

1  Plaintiffs Robert A. Pastor, Regina Florence, William Florence, and Scott

2  Van Horn (collectively referred to as "Plaintiffs") on behalf of themselves and

3  others similarly situated, request final approval of this proposed class action

4  settlement agreement (the "Revised Settlement Agreement," "Agreement," or

5  "Agr.") with Defendant Bank of America, N.A. (referred to as "Defendant" and/or

6  "BANA"). Defendant BANA does not oppose this motion.

7  **I.    INTRODUCTION**

8  This Settlement was overwhelmingly supported by the class as 19.52% of

9  Class Members opted-in and no objections were filed. This settlement is the

10  culmination of three years of litigation and provides relief for all the Class

11  Members allegedly harmed by BANA's credit reviewing process. The Revised

12  Settlement Agreement and Addendum, reached after mediation sessions before

13  Honorable Edward A. Infante (Ret.), provide for a considerable financial benefit of

14  $1,802,998.58[1] in a common fund ("Settlement Fund") to the total settlement Class

15  Members. [2]

16  Under the Revised Settlement Agreement ("Agreement" or "Agr."), each

17  Class Member who timely submits an approved claim will receive a *pro rata* award

18  from the Settlement Fund.  Agr. at ¶ 69.[3]  As of July 19, 2018, Kurtzman Carson

19  Consultants, LLC ("KCC" or "Claims Administrator") has processed 121,956 claim

20  forms and determined 114,512 to be valid. Declaration of Deborah McComb

21

22  [1]  Original settlement fund of $1,645,000 plus the additional amount of $45,646.58

23  paid to Group 2 Class Members, $20,000 for attorney's fees and an additional
   $92,352.00 for the supplemental notice.

24  [2] Defined terms are used as defined in the Revised Settlement Agreement.

25  [3]  The Revised Settlement Agreement was filed at Dkt. No. 54-1. In addition, the
   parties executed an Addendum to the Settlement Agreement that supplemented the

26  Revised Settlement Agreement. The Addendum was filed at Dkt. No. 69-1. This

27  memorandum refers to the Addendum as appropriate.

28

1    ("McComb Decl."), ¶ 19.

2           Every Class Member had the opportunity to receive a *pro rata* share of the

3    Settlement Fund by: (1) submitting an online claim via the Settlement Website, or

4    (2) by submitting a Claim Form by mail to the Claims Administrator, or (3)

5    submitting a claim over the phone through Interactive Voice Response ("IVR").

6    Agr. ¶ 43. The Class Members were informed of the Settlement by direct Mail

7    Notice, Publication Notice, and the detailed notice posted on the Settlement

8    Website. *Id*.

9           Currently, after subtracting the requested attorneys' fees and costs, service

10   award to the Class Representatives, and the notice and administrative expenses

11   from the Settlement Fund, each of the 114,512 valid claims received thus far will be

12   entitled to a settlement check of approximately $4.06. The deadline to submit a

13   claim to the Settlement was June 19, 2018.  McComb Decl., ¶ 19.

14          This Settlement also created an incentive for Defendant and other businesses

15   to comply with the FCRA, which benefits the Class Members, consumers in

16   general, and compliant competitive businesses. *See* David R. Hodas, *Enforcement*

17   *of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd*

18   *When Enforcement Authority Is Shared by the United States, the States, and Their*

19   *Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit

20   from noncompliance punishes those who have complied by placing them at a

21   competitive disadvantage. This creates a disincentive for compliance.").

22          The reaction to this settlement was extremely positive and should be given

23   final approval, especially in the absence of any objections to the Settlement.

24   **II.    PROCEDURAL HISTORY**

25          Plaintiff Pastor filed the initial class action complaint on August 21, 2015

26   asserting violations of the Fair Credit Reporting Act 15 U.S.C. § 1681n  [See Dkt.

27   No. 1].   Thereafter, BANA responded by generally denying the allegations of

28

HYDE & SWIGART
Consumer Protection Attorneys

1    Plaintiff's Complaint. [Dkt. No. 18]. A mediation occurred before Honorable

2    Edward A. Infante (Ret.) was held on July 26, 2016. A Settlement Agreement and

3    Release was fully executed by the parties on April 13, 2017.

4            On April 13, 2017, the parties jointly filed a Motion for Preliminary

5    Approval of Class Action Settlement and Certification of Settlement Class

6    ("Preliminary Approval Motion") [Dkt No. 46],[4] which the Court granted on July 7,

7    2017 (*see* Order granting Motion for Preliminary Approval of Class action

8    Settlement and Certification of Settlement Class ("Preliminary Approval Order")

9    [Dkt. No. 55]).

10           A Revised Settlement Agreement and Release that superseded the original

11   Agreement was fully executed by the parties on June 22, 2017.

12           On October 12, 2017, Plaintiffs timely filed a Motion for Attorneys' Fees,

13   Costs and Incentive Payment (the "Fee Brief"), Dkt. No. 58, which was thirty days

14   prior to the deadline to object to the Settlement.

15           After BANA complied with the Preliminary Approval Order and provided

16   notice of the Settlement to approximately 526,627 Group 1 Original Settlement

17   Class Members, in December 2017, BANA discovered that, due to an inadvertent

18   error in retrieving names and addresses of class members from BANA's electronic

19   consumer records, the Class Settlement Notice was not mailed to all borrowers on

20   accounts with multiple borrowers. Due to a retrieval error, only the primary

21   borrower listed on the account was included in the mailing list of Settlement Class

22   Members created by BANA. As a result, additional or secondary borrowers' names

23   were not included in the mailing list and therefore were not separately named on the

24   Class Settlement Notice KCC mailed to their properties. BANA identified

25

─────────────

26   [4] Supplemental briefing was filed on June 07, 2017 (Dkt. No. 52) and on June 23,
     2017 (Dkt. No. 54).

27

28

HYDE & SWIGART
Consumer Protection Attorneys

1    approximately 61,410 secondary or additional borrowers (the "Affected Settlement

2    Class Members") in Group 2.[5]

3          Accordingly, on February 2, 2018, the parties filed a Joint Motion to Request

4    Supplemental Preliminary Approval of Addendum to Revised Class Action

5    Settlement Agreement (the "Supplemental Preliminary Approval Motion"). Dkt.

6    No. 68. The motion sought the Court's approval of the Supplemental Class

7    Settlement Notice.

8          The parties executed the Addendum on February 12, 2018. Under the

9    Addendum, the parties agreed to provide a settlement amount of $1,645,000 in a

10   common fund ("Settlement Fund") to the 526,627 Original Settlement Class

11   Members in Group 1 and an additional amount (that was undetermined at the time

12   of the settlement) to the 60,174 Affected Settlement Class Members in Group 2 so

13   that any approved claims from Group 2 would each receive the exact same amount

14   as each class member from Group 1.

15         In its February 26, 2018 order, the Court ordered the parties to revise the

16   Supplemental Class Settlement Notice to include additional information, as well as

17   clarify certain information to be in line with the Addendum to the Class Action

18   Settlement Agreement. Dkt. No. 71. The parties revised the Supplemental Class

19   Settlement Notice to comply with the February 26, 2018 order.

20         On March 16, 2018 the Court granted the Supplemental Preliminary

21   Approval Motion. Dkt. No. 79.

22         A total of 586,801 Class Members (526,627 from Group 1 and 60,174 from

23   Group 2) were provided notice.  568,531 class members received notice. McComb

24

25   _____
     [5] The number of Affected Settlement Class Members included in this paragraph
26   was an estimate at the time. The final number was reduced to 58,090 after
     accounting for duplicates.
27

28

1   Decl., ¶ 13.  To date the Claims Administrator has received a total of 121,956

2   claims. McComb Decl., ¶ 19. Of these claims, 103,269 were determined to be valid

3   claims from Group 1 and another 11,243 from Group 2 for a total of 114,512 valid

4   claims (from Groups 1 and 2). *Id.*

5        Class Members were permitted to request exclusion from the Settlement.

6   Agr. ¶ 50; Addendum ¶ 11.  Thirty-three requests for exclusion have been received

7   by the Claims Administrator as of July 19, 2018.  McComb Decl., ¶ 17.  Class

8   Members were also permitted to object to the Settlement. Agr. ¶ 51; Addendum ¶

9   12.  There are no objections to the Settlement.  McComb Decl., ¶ 18.

10       Plaintiffs now submit this timely motion for final approval of class action

11  settlement. Pursuant to Rule 23(e), Plaintiffs seek final certification and approval of

12  the proposed class action settlement, as well as approval of the Fee Brief.

13  Specifically, Plaintiffs respectfully request that the Court enter a Final Judgment

14  and Order of Dismissal with Prejudice similar to the proposed order submitted with

15  this unopposed motion.

16  **III.    THE FCRA AND THE CLASS ALLEGATIONS**

17       The Fair Credit Reporting Act ("FCRA") permits creditors to access or

18  "pull" credit information from files maintained by credit reporting agencies only for

19  certain specified "permissible purposes."  *See 15 U.S.C. §1681b.*  One permissible

20  purpose is to conduct a soft credit inquiry referred to as an "account review" (i.e., a

21  creditor may seek information from a given consumer's credit report when it "has a

22  legitimate business need for the information to review an account to determine

23  whether the consumer continues to meet the terms of the account" or it "intends to

24  use the information in connection with a credit transaction involving the consumer

25  on whom the information is to be furnished and involving the…review…of an

26  account of the consumer".  *See 15 U.S.C. §1681b(a)(3)(A) & (F)(ii).*

27

28

HYDE & SWIGART
Consumer Protection Attorneys

These account reviews are initiated by the creditor and are considered "soft credit pulls" because the creditor pulls information from the consumer's report, but the pull is not visible to any party other than the consumer, and does not affect the consumer's credit score.   Further, consumers only learn of the soft pull by reviewing their credit reports; they are not routinely notified that a soft pull has actually occurred.

Plaintiffs asserted that they are former customers of BANA, who included BANA as a creditor in each Plaintiffs' bankruptcy in the U.S. Bankruptcy Court, District of Nevada. [Plaintiff's First Amended Complaint ("FAC"), ¶¶ 23-24, 40-41, & 52-53.  Each Plaintiff learned by reviewing their credit report that BANA had still conducted soft pulls of their credit file after the bankruptcy discharge date for the alleged purpose of conducting account reviews.  FAC ¶¶ 29, 46 & 59.  Plaintiffs alleged that they did not conduct any business nor incur any additional financial obligations with BANA since the date of the discharge of their bankruptcies.  FAC ¶¶ 31& 58.

On or about August 21, 2015, Plaintiff Pastor filed his complaint against BANA.  On April 11, 2017, the parties filed a stipulation requesting the Court allow Plaintiff to file a First Amended Complaint adding Regina Florence, William Florence, and Scott Van Horn as additional plaintiffs and class representatives[6]. In the First Amended Complaint, Plaintiffs alleged that BANA did not have a permissible purpose to pull their credit file information from their credit reports because they did not give their consent and their debt had been discharged in Bankruptcy on the dates that BANA accessed their credit files.  FAC ¶¶ 31, 46 &

---

[6]  Regina and William Florence, and Scott Van Horn each had previously filed a class action in the U.S. District Court District of Nevada, case numbers 2:16-cv-00365 and 2:16-cv-00362-JCM-VCF respectively, but the definition of this class encompasses the putative classes in their previously filed cases. Therefore in the interest of judicial economy the Nevada cases were dismissed and the respective plaintiffs were added to this matter.

HYDE & SWIGART
Consumer Protection Attorneys

59.  Plaintiffs alleged that BANA's conduct was willful because not only should BANA have received notice of Plaintiffs' bankruptcy filing and discharge, but in some cases, Plaintiffs alleged that BANA also received additional notices throughout the bankruptcy. As to Plaintiff Pastor, Plaintiff Pastor alleged that BANA received a notice of a motion and an order respectively titled NOTICE OF MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF BANK OF AMERICA (ACCT ENDING IN 7199) PURSUANT TO 11 U.S.C §506(a) AND §1322," and "ORDER ON MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF BANK OF AMERICA (ACCT ENDING IN 7199) PURSUANT TO 11 U.S.C §506(a) AND §1322 BY DEBTORS." FAC ¶ 26.

For willful violations of the FCRA, successful plaintiffs are entitled to recover statutory damages of $100-$1,000, attorneys' fees, and potentially, punitive damages. *See 15 U.S.C. §1681n.*  In their suit, Plaintiffs sought such damages for themselves and for the members of the class they seek to represent.  For merely negligent violation of the FCRA's permissible purpose provisions, consumers are restricted to recovery of their actual damages. *See 15 U.S.C. §1681n.*  It is difficult to prove actual damages in any account review case because "soft pulls" are seen only by the consumer and do not affect consumers' credit scores.

Defendant answered and denied all of the allegations and liability. *See* Dkt. No. 18; *see also* Recitals to Agreement.

## IV.   SETTLEMENT

BANA realized the risks in continuing litigation and the potential for Plaintiff prevailing under a class action.  Plaintiff, in turn, also realized the risks of moving forward with litigation and having BANA prevail.  Thus, the parties agreed to participate in mediation.  The Honorable Edward A. Infante (Ret.) was chosen as mediator by the parties due to his extensive experience in the settlement of large

1    class action cases, in particular those involving claims for statutory damages under

2    the FCRA and other consumer protection statutes.  The mediation occurred on July

3    26, 2016 and an agreement was reached outlining a settlement. After additional

4    confirmatory discovery was conducted, a Settlement Agreement and Release was

5    fully executed by the parties on April 13, 2017. A Revised Settlement Agreement

6    and Release that superseded the original Agreement was fully executed by the

7    parties on June 22, 2017. The Addendum to the Revised Settlement was executed

8    by the parties on February 12, 2018.

9         As noted in the Preliminary Approval Motion (Dkt. No.46), the Settlement

10   Agreement resulted from extensive arm's length negotiations before the Honorable

11   Edward A. Infante (Ret.). The parties also conducted substantial discovery,

12   including written discovery, and a confirmatory deposition following mediation.

13   Kazerounian Decl., ¶ 6. The parties also engaged in further negotiations to prepare

14   and finalize the Revised Settlement Agreement and the Addendum.

15        The time and effort spent on settlement negotiations, as well as the time spent

16   with Judge Edward A. Infante (Ret.) in the mediation session, militate in favor of

17   final approval of the proposed Settlement, as they strongly  indicate there was no

18   collusion.

19        **A.    The Fairness Hearing**

20

21        At the Fairness Hearing, the Court will decide whether to finally approve the

     Settlement and will also consider the Fee Brief requesting $431,250 in attorneys'

22   fees and actual litigation costs (currently $19,023.42), and a service award of

23   $5,000 to each of the four Class Representatives.

24

25        **B.    Attorneys' Fees, Costs Application, And Service Awards**

26        As explained in the Fee Brief, pursuant to the terms of the  Revised

27   Settlement Agreement and the Addendum, Class Counsel shall move the Court for

28

HYDE & SWIGART
Consumer Protection Attorneys

1    an award of attorneys' fees ("Motion for Fees") and costs not to exceed 30% of the

2    amount actually contributed to the common fund.  [Settlement Agreement, ¶ 53].

3    Any award of fees and costs approved by the Court shall be paid from the common

4    fund three days after the Effective Date.   Court approval of Class Counsel's

5    attorney's fees and costs is not a condition of the settlement.  [*Id.*]. Class Counsel

6    now seeks $431,250 in attorneys' fees, which represents less than 25% of the  total

7    Settlement Fund of $1,802,998.58; costs of litigation in the amount of $19,023.42;

8    and service awards in the amount of $5,000 to each of the Class Representatives to

9    be distributed from the Settlement Fund.

10           Plaintiffs respectfully request that the Court enter an Order similar to the

11   Final Judgment and Order of Dismissal with Prejudice submitted with this motion,

12   which includes a provision for such requested attorneys' fees, costs, incentive

13   payments, and payment for notice and claims administration.

14

15   **C.     Class Action Settlement Terms**

        The significant terms of the Settlement are as follows:

16

17           **1.     Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class**

18   The Settlement Class is defined as:

19           All persons with an address within the United States
             whose consumer credit report was obtained by BANA
20           and/or FIA Card Services (FIA) for an Account Review
             Inquiry during the period August 21, 2010, through the
21           Date of Preliminary Approval where the subject account
             relationship had terminated because any of the following
22           criteria were met: (i) the debt on the account had been
             discharged in bankruptcy; (ii) the account was closed with
23           a zero balance; or (iii) the account had been sold or
             transferred to a third party.  Excluded from the Class are
24           all current Bank of America employees, officers and
             directors, and the judge and magistrate presiding over this
25           Action and their respective staff.

26

27

28

1

2
## 2.    The Settlement Fund

3
    The Settlement established a fund of $1,645,000 paid by BANA to resolve

4
the claims at issue. *See* Agr. ¶ 32. In addition, under the Addendum, BANA agreed

5
to pay each of the Affected Settlement Class Members who made a valid claim the

6
amount that each of the Original Settlement Class Members would have received

7
under the original settlement. *See* Addendum ¶ 9. There are currently 11,243 valid

8
claims from Group 2, and with each claimant receiving the $4.06 as is to be

9
received by Group 1 class members, BANA is to pay an additional $45,646.58.

10
Payments from the Settlement Fund are in the form of a *pro rata* settlement check,

11
which will be mailed to each of the Class Members who made a valid and approved

12
claim. Agr. ¶ 69. KCC will send the Settlement Checks via U.S. mail no later than

13
thirty (30) days after the Judgment has become final ("Effective Date"), as provided

14
under the Agreement. *Id.* Any funds not paid out as the result of un-cashed

15
Settlement checks will be paid out as a *cy pres* award, to a recipient to be agreed to

16
by the parties and approved by the Court, as set forth in ¶ 75 of the Agreement. No

17
money remaining in the Settlement Fund shall revert to or otherwise be paid to

18
BANA.

19

20
## V.    ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

21
    The unusually high participation rate, the low number of opt-outs, and the

22
absence of objections indicate that the terms of the Settlement as conveyed by the

23
three methods of notice, were understood by the class. *Dewey v. Volkswagen of*

24
*Am.*, 728 F. Supp. 2d 546, 572 (D.N.J. 2010), *rev'd on other grounds sub nom.*

25
*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012). The Claims

26
Administrator's compliance is described below.

27

28

1    **A.    CAFA Notice**

2    The initial CAFA notice was mailed on May 19, 2017, and supplemental

3    CAFA notices were mailed on July 28, 2017, September 6, 2017, and September

4    14, 2017.  *See* McComb Decl., ¶¶ 1-8 and supporting exhibits attached to McComb

5    declaration.

6    **B.    Mail Notice**

7    KCC complied with the notice procedure set forth in the Preliminary

8    Approval Order (Dkt. No. 55). On July 27, 2017, KCC received from Defendant a

9    lists of 534,972 persons identified as the Class List and on and August 8, 2017, an

10   additional Class List containing 618 persons.  McComb Decl., ¶ 9. The Class Lists

11   included names and mailing addresses. *Id.* KCC formatted the lists for mailing

12   purposes and processed the names and addresses through the National Change of

13   Address Database ("NCOA") to update any addresses on file with the United States

14   Postal Service ("USPS"). *Id.* A total of 50,789 addresses were found and updated

15   via NCOA.  *Id.* KCC removed duplicates and updated its proprietary database with

16   the Class List, including those records with incomplete mailing addresses. *Id.*

17   On August 16, 2017, KCC caused the double post-card notice with

18   detachable claim form "Mail Notice" to be printed and mailed to the 526,627 names

19   and mailing addresses in the Group 1 Class List. McComb Decl., ¶ 11.

20   On March 23, 2018, KCC sent the Supplemental Mail Notice to all 58,090

21   class members from Group 2 for whom BANA had identifiable or known

22   addresses. After performing additional research to locate the remaining addresses,

23   KCC sent out notice to an additional 2,084 Group 2 class members on April 10,

24   2018. *Id.*

25   Since mailing the Mail Notices to the Class Members, KCC has received

26   6,976 Mail Notices returned by the USPS with forwarding addresses (6,553 from

27   Group 1 and 423 from Group 2).  McComb Decl., ¶ 12. KCC immediately caused

28

HYDE & SWIGART
Consumer Protection Attorneys

1  Mail Notices to be re-mailed to the forwarding addresses supplied by the USPS. *Id.*
2  Since mailing the Mail Notices to the Class Members, KCC has received 63,717
3  Mail Notices returned by the USPS with undeliverable addresses (56,478 from
4  Group 1 and 7,239 from Group 2). McComb Decl., ¶ 13. Through credit bureau
5  and/or other public source databases, KCC performed address searches for these
6  undeliverable Mail Notices and was able to find updated addresses for 45,447 Class
7  Members (39,885 from Group 1 and 5,562 from Group 2). *Id*. KCC promptly re-
8  mailed Mail Notices to the new found addresses. *Id.*

9
10       **C.      Publication Notice**
11            To provide notice to the Class Members for whom there are no names and
12  addresses, KCC gave notice of the Settlement by national publication in USA
13  Today on August 16, 2017. McComb Decl., ¶ 14 (Exhibit k thereto). This notice
14  summarized the Settlement, advised the  Class Members on how to file claims and
15  directed Class Members to the settlement website for further information about the
16  Settlement.
17
18       **D.      Detailed Notice Posted On The Settlement Website**
19            On      August     15,    2017,    KCC     established     a    website
20  www.PastorBANAFCRASettlement.com dedicated to this matter to provide
21  information to the Class Members and to answer frequently asked questions.  The
22  website URL was set forth in the Mail Notice Publication Notice and Long Form
23  Notice.  Visitors of the website can download copies of the Long Form Notice,
24  Claim Form and other case-related documents including Class Counsel's Motion
25  for Attorney's Fees and Costs.  Visitors can also submit claims online. McComb
     Decl., ¶ 15.
26
27
28

After the Court's March 13, 2018 Order re Supplemental Preliminary Approval (Dkt. No. 75), KCC updated the website to comply with the court's order.[7] *Id*. KCC also uploaded the relevant court documents to the website. Following the March 13, 2018 order, KCC also reestablished the website to accept claims submitted online for all class members (in both Group 1 and Group 2). *Id*.

### E.    Interactive Voice Response

15.    On August 15, 2017, KCC established an Interactive Voice Response ("IVR") toll-free telephone number dedicated to answering telephone inquiries from Class Members and to file Claims through the IVR. McComb Decl., ¶ 16. Following the Court's March 16, 2018 order granting the Supplemental Preliminary Approval Motion, KCC reestablished the IVR for claims to be filed by all members. *Id*.

### F.    Claims Procedure, Including Expenses, And Claims Received

Class Members were provided no less than ninety (90) days to make a claim for a Settlement payout. Kazerounian Decl., ¶ 14; *see also* Agr. ¶ 8; Addendum ¶ 14.

The procedure for submitting a claim was made as easy as possible – a claim form could be submitted online via the Settlement Website, through IVR or by U.S. Mail.  Kazerounian Decl., ¶ 15.  All that was required was the Class Member's full name and address and signature on the provided claim form. Dkt. No. 56-2.

---

[7] In particular, KCC changed the website to comply with the following requirements under the Court's order:
a.    The site should not use the acronym "BANA."
b.    The Frequently Asked Questions page must be updated.
c.    The class notice page should be updated once the second notice is finalized; the page should also attach blank claim forms.
d.    The personalized claim forms on the website must be modified so they no longer state the outdated November 17, 2017 deadline.

HYDE & SWIGART
Consumer Protection Attorneys

1    KCC has received 114,512 valid claims from Class Members as of July 19,

2    2018. McComb Decl., ¶ 19. This equates to claims rate for valid claims of

3    approximately 19.52% from the 586,801 Class Members that were mailed notice.

4    KCC will issue awards in the form of the settlement checks thirty (30) days

5    of the Effective Date to the Class Members who have submitted valid claim forms.

6    Agr. ¶ 69.  The checks will expire 90 days after issuance.  Agr. ¶ 73.

7    ### 1.    No Objections and Only 33 Requests For Exclusion

8    Class Members were permitted to opt-out or to submit an objection. *See* Agr.

9    ¶¶50-52; Addendum ¶¶ 11-13. As of July 6, 2018, KCC has received only 33

10   requests for exclusion and there are no objections to the Settlement.[8]  McComb

11   Decl., ¶ 17.  The deadline to submit a request for exclusion or object was June 19,

12   2018. *Id*.

13   The fact that there are no objections and only 33 timely exclusion requests

14   out of approximately 586,000 Class Members highly supports the adequacy of the

15   proposed Settlement. *In re Diamond Foods, Inc*., 2014 U.S. Dist. LEXIS 3252, *9

16   (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class

17   members to the proposed class settlement. After 67,727 notices were sent to

18   potential class members, there have been only 29 requests to opt out of the class

19   and no objection to the settlement or the requested attorney's fees and expenses.").

20   ### 2.    Timothy Thrasher Letter

21   On November 14, 2017, a letter was received by the Court from a Class

22   Member Timothy L. Thrasher. See Dkt. No. 59. In this mailing, Mr. Thrasher

23   completed the claim form. *Id*. pg 2. In Mr. Thrasher's letter he requested

24   $697,300.00 from Bank of America related to a home foreclosure. *Id*. pg. 1. Mr.

25

26   [8] Class Counsel are also unaware of any objection from any of the Attorney

27   Generals. Kazerounian Decl. ¶ 17.

28

HYDE & SWIGART
Consumer Protection Attorneys

1   Thrasher's letter did not specify he was objecting to the settlement, nor did he
2   indicate he wanted to opt-out of the settlement. *Id.* Plaintiff's counsel attempted to
3   call Mr. Thrasher at a phone number contained in Mr. Thrasher's filed documents,
4   but was not able to reach Mr. Thrasher for a clarification of his position.
5   McGlothlin Decl. ¶ 20.  In light of the fact that Mr. Thrasher completed the claim
6   form, combined with the fact that the issues raised in Mr. Thrasher's letter are
7   unrelated to the claims being released, Class Counsel has no objection to consider
8   Mr. Thrasher's filing a valid claim form.

### 3.   Arthur Hill Letter

9   On January 8, 2018, a letter was received by the Court from an individual
10  named Arthur Hill. Mr. Hill claimed to be a former auto loan customer of BANA.
11  *See* Dkt. No. 65. Mr. Hill claimed that he "fit squarely within the criteria for class
12  members," but had not received notification of this matter. *Id.* at 1.  Mr. Hill stated
13  that if he had received notice, he would have opted out of the class. *Id.* Mr. Hill
14  later sued BANA individually in a separate lawsuit, and the parties reached a
15  settlement and his claims were released therein.

### 4.   Settlement Checks

16  The net settlement fund available to pay Group 1 Class Members is
17  419,726.58, which was determined by subtracting the anticipated combined Class
18  Representative service awards totaling $20,000 ($5,000 each), Class Counsels'
19  requested fees of $411,250[9], Class Counsels' actual litigation expenses of
20  $19,023.42, and total settlement administrative costs of $775,000 from the
21  Settlement Fund. McComb Decl., ¶ 20.  Based on the net settlement funds and
22  103,269 valid claims from Group 1, each valid claimant in Group 1 would receive
23  approximately $4.06 from this Settlement. Additionally, as explained in the

---

26  [9]  $20,000 of Class Counsel's fee request is to be paid by BANA outside the
27  original $1,645,000 settlement fund for a total fee request of $431,250.

28

HYDE & SWIGART
Consumer Protection Attorneys

1  Revised Settlement, each member of Group 2, will receive that same amount.

2  **VI.    THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR,**
3  **REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY**
4  **APPROVED**

5          As the Court ruled in its Preliminary Approval Order and the Supplemental
6  Preliminary Approval Order the class settlement is fair, reasonable, adequate, and
7  in the best interests of the Settlement Class members. *See* Preliminary Approval
8  Order, Dkt. No. 55, pp. 2-3; Supplemental Preliminary Approval Order, Dkt. No.
9  79, pp. 3-4.  The relevant factors demonstrate that the proposed Settlement should
10  also be finally approved as fair, reasonable and adequate as well.

11

12          **A.    The Settlement Satisfies The Requirements of Fed. R. Civ. P. 23**

13          The Rule 23(a) and (b) factors were previously analyzed and applied by
14  Plaintiffs in the Motion for Preliminary Approval (Dkt. No. 46). However, Class
15  Counsel will briefly discuss each factor here.

16                  *i.    The members of the Settlement Class are sufficiently*
17                  *numerous.*

18          Generally, the numerosity requirement is satisfied when the class is
19  comprised of 40 or more members.  *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544,
20  549 (N.D. Cal. 2007). In this case, the class was 526,627 people in Group 1 and
21  60,174 people in Group 2 for a total of 586,801 people. McComb Decl., ¶ 11. As a
22  result, this putative class action far exceeds the numerosity threshold and meets the
23  first prerequisite of Rule 23 for settlement purposes.

24                  *ii.    The requirement of commonality is satisfied.*

25          The second prerequisite to class certification is the existence of questions of
26  law or fact that are common to the class.  Fed. R. Civ. P. 23(a)(2).  The Ninth
27  Circuit has made clear that the commonality requirement is to be "construed

28

1  permissively." *Dukes v. Wal-Mart, Inc.*, 774 F.3d 1214, 1225 (9th Cir. 2007). The

2  existence of shared legal issues" will satisfy the commonality requirement even if

3  there are "divergent factual predicates." *Dukes*, 774 F.3d at 1225.

4        In this case, the significant common issues presented are whether each of the

5  Class Members' credit reports were obtained, and, if so, whether each class member

6  had an existing open account with Bank of America. Based upon this conduct,

7  Class Members all seek the same remedy as permitted by the FCRA.  Under these

8  circumstances, the commonality requirement is satisfied for purposes of certifying a

9  settlement class.

10              ***iii.    The requirement of typicality is satisfied.***

11       The third prerequisite to class certification is that Plaintiffs' claims are

12  typical of the class.  Fed. R. Civ. P. 23(a)(3).  A plaintiff's claim is typical "if it

13  arises from the same event or practice or course of conduct that gives rise to the

14  claims of other class members and his or her claims are based on the same legal

15  theory."  *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.3d 225, 232 (7th Cir.

16  1983).

17       Here, Plaintiffs' claims are based on BANA's systematic, automated account

18  review inquiries.  Because Plaintiffs' claims arise from the same course of conduct

19  by BANA, typicality under Rule 23(a)(3) is satisfied.  Since each Class Member

20  also had their credit reports reviewed by BANA, there is a unity of interest between

21  Plaintiffs and the Class Members that Plaintiffs seek to represent.    Stated

22  differently, the violation of the FCRA alleged by Plaintiffs is the same violations

23  alleged by the Class Members.  Therefore, Plaintiffs' claims are typical of the

24  claims of the class.

25

26            ***iv.    The requirement of adequate representation is satisfied.***

27       The final requirement of Rule 23(a) is that the representative plaintiffs will

28

HYDE & SWIGART
Consumer Protection Attorneys

1  fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4).

2  "This factor requires: (1) that the proposed representative plaintiffs do not have

3  conflicts of interest with the proposed class, and that plaintiffs are represented by

4  qualified and competent counsel." *Dukes*, 509 F.3d at 1185.

5          There is no intra-class conflict between the class representatives and the

6  other class members. Each class representative understands the case and why it was

7  brought on each of their behalf. Further, Plaintiffs' attorneys are knowledgeable and

8  experienced in class action litigation and in litigation of FCRA claims and are free

9  from conflicts with the class. See Decl. of Swigart, ¶ 9; Kazerounian ¶ 9.

10         Since preliminary approval, Plaintiffs have continued to serve as adequate

11  Class Representatives by reviewing documents and submitting declarations in

12  support of the Fee Brief; and Plaintiffs support final approval of the proposed

13  settlement. *See* Kazerounian Decl., ¶ 10. Class Counsel have continued to

14  adequately represent the interests of the Class Members and the named Plaintiffs,

15  having, among other things, timely filed the Fee Brief on October 12, 2017 (Dkt.

16  No. 58) and assisted with settlement administration and responded to Class

17  Members' inquiries (Kazerounian Decl., ¶ 11; Declaration of Joshua B. Swigart

18  ("Swigart Decl."), ¶ 11; and Declaration of David J. McGlothlin ("McGlothlin

19  Decl."), ¶ 11).

20

                      *v.      The Action meets the requirements of Rule 23(b)(3).*

21
22         Once the four requirements of Rule 23(a) are met, "the potential class must

       also satisfy at least one provision of Rule 23(b)." *Rosario*, 963 F.3d at 1017; see
23
       also *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  Rule 23(b)(3) states
24
       that a class may be certified when "questions of law or fact common to class
25
       members predominate over any questions affecting only individual members, and
26
       [...] a class action is superior to other available methods for fairly and efficiently
27
       adjudicating the controversy."
28

HYDE & SWIGART
Consumer Protection Attorneys

1

2      Common issues predominate here because the central question concerning

3  BANA's conduct in this case—whether BANA conducted systematic account

4  reviews on class members' credit files—can be established through generalized

5  evidence. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 ("[T]his case presents

6  several common questions of law and fact arising from a central issue:  Heartland's

7  conduct … the resulting injury to each class member from that conduct.  Given the

8  settlement posture of this case and the Fair Credit Reporting Act claim, the

9  common questions predominate over individual issues.")

10

11          **B.      The Settlement Should Be Finally Approved By The Court.**

12      "Unlike the settlement of most private civil actions, class actions may be

13  settled only with the approval of the district court." *Officers for Justice v. Civil

14  Service Com'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir.

15  1982). "The court may approve a settlement . . . that would bind class members

16  only after a hearing and on finding that the settlement . . . is fair, reasonable, and

17  adequate." Fed. R. Civ. P. 23(e)(1)(C).  The Court has broad discretion to grant

18  such approval and should do so where the proposed settlement is "fair, adequate,

19  reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d

20  1011, 1026 (9th Cir. 1998).

21      "To determine whether a settlement agreement meets these standards, a

22  district court must consider a number of factors, including: 'the strength of

23  plaintiffs' case; the risk, expense, complexity, and likely duration of further

24  litigation; the risk of maintaining class action status throughout the trial; the amount

25  offered in settlement; the extent of discovery completed, and the stage of the

26  proceedings; the experience and views of counsel; the presence of a governmental

27  participant; and the reaction of the class members to the proposed settlement.'"

28  *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of

HYDE & SWIGART
Consumer Protection Attorneys

1   importance to be attached to any particular factor will depend upon and be dictated

2   by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique

3   facts and circumstances presented by each individual case." *Officers for Justice*,

4   688 F.2d at 625.  The Court must balance against the continuing risks of litigation

5   and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521

6   F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.,* 618 F.

7   Supp. 735, 741 (S.D. N.Y. 1985).

8       The Ninth Circuit has long supported settlements reached by capable

9   opponents in arms' length negotiations.  In *Rodriguez v. West Publishing Corp.*,

10   563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts

11   should defer to the "private consensual decision of the [settling] parties." *Id.* at 965,

12   citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998).  The district court must exercise

13   "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power*

14   *Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87

15   F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However,

16   "where, as here, a proposed class settlement has been reached after meaningful

17   discovery, after arm's length negotiation conducted by capable counsel, it is

18   presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F.

19   Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS

20   15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery

21   and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural*

22   *Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

23       Application of the relevant factors here confirms that the proposed settlement

24   should be finally approved. This Settlement was reached with the assistance of

25   experienced mediator, Hon. Judge Edward Infante (Ret.), which demonstrates a

26   lack of collusion between the parties. *See Jones v. GN Netcom, Inc. (In re Bluetooth*

27   *Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011).  Based on the

28

HYDE & SWIGART
Consumer Protection Attorneys

facts of this case, Class Counsel and the named Plaintiffs agree that this Settlement is fair and reasonable; among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. Kazerounian Decl., ¶¶ 8 and 13; Swigart Decl., ¶ 8 and 13; McGlothlin Decl., ¶ 10 and 15.

## 1. The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Further Litigation

Defendant has raised numerous defenses to the Plaintiff's claims and putative class claims. *See* Recitals to Agr. Many of these defenses are set forth at length in the Joint Motion to Certify Class and Approve Class Action Settlement (Dkt. No. 46). Defendant contends that its defenses have merit and would defeat the claims of the putative class. *See* Recitals to Agr. However, settlement eliminates any further risk and expense for the parties.

Considering the potential risks and expenses associated with continued prosecution of the lawsuit, the probability of appeals by both sides, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . ." *Id.*

While Class Counsel believe strongly in the merits of the claims brought on behalf of the proposed Class (*see* Joint Motion to Certify Class and Approve Class Action Settlement, Dkt. No. 46, pg 5, 19-20.), they also recognize that any case encompasses risks and that settlements of contested cases are preferred in this circuit.

Even if Plaintiffs were to prevail at trial, risks to the class remain. *See West*

1    *Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is

2    known from past experience that no matter how confident one may be of the

3    outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079

4    (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.

5    1979) (reversing $87 million judgment after trial). "Indeed, courts have previously

6    granted approval to class action settlements precisely because certification of such

7    actions is a risky endeavor." *Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS

8    50416, *12 (N.D. Cal. Apr. 15, 2015) (citing *In re Capital One*, 80 F. Supp. 3d 781,

9    2015 U.S. Dist LEXIS 17120 at *22-23 (approving class settlement in light of

10   "serious obstacles to class certification")).

11          The risks in this action were explained in detail in the Joint Motion to Certify

12   Class and Approve Class Action Settlement, Dkt. No. 46. Briefly, however,

13   Plaintiffs face several risks due to: 1) Whether BANA had a permissible purpose to

14   access consumer's credit reports, 2) difficulties in determining whether BANA's

15   actions in obtaining the credit report were negligent and/or willful and what actual

16   damages, if any, were sustained by class members; and 3) a potential motion by

17   Defendant challenging Plaintiffs' Article III standing, as many FCRA defendants

18   have done following the Supreme Court's decision in *Spokeo Inc. v. Robins*, 136 S.

19   Ct. 1540 (2016).

20          Courts have determined that the FCRA is ambiguous and does not

21   distinguish between open and closed accounts, leaving open the question of

22   whether it is permissible to conduct Account Review Inquiries on closed accounts.

23   *See Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-1319 (11th Cir.

24   2009) ("[W]e cannot say that the term 'account' necessarily means 'an open

25   account[]'"; affirming summary judgment dismissal of plaintiff's claim that it was

26   impermissible to conduct account reviews on closed accounts); *Wilting v*

27   *Progressive County Mutual Insurance Co.*, 227 F.3d 474, 476 (5th Cir. 2000)

28

HYDE & SWIGART
Consumer Protection Attorneys

1  (rejecting plaintiff's claim that only "existing" accounts could be reviewed and

2  noting that "neither the [FCRA] nor the FTC's commentary on the Act suggests

3  that a report may only be permissibly obtained during particular points in the

4  parties' relationship[]"); *see also Banga v. Experian Info. Solutions, Inc.*, 473 F.

5  App'x 699 (9th Cir. 2012) (affirming district court's holding that it is not

6  objectively unreasonable to read the FCRA as permitting inquiries on closed

7  accounts).

8      Additionally, some courts have found that a consumer's discharge of

9  personal liability in bankruptcy does not necessarily eliminate the creditor's

10  permissible purpose for conducting Account Review Inquiries, even though the

11  consumer's liability to pay the account is discharged in bankruptcy. *See, e.g.*,

12  *Germain v. Bank of Am., N.A.*, No. 13-cv-676, 2014 U.S. Dist. LEXIS 158874, at

13  *13-15 (W.D. Wis. Nov. 7, 2014), *reconsideration denied*, 2015 U.S. Dist. LEXIS

14  14009 (W.D. Wis. Feb. 5, 2015).

15      Finally, there is a real possibility that Defendant's actions could be

16  determined to be merely negligent and that no actual damages were suffered by the

17  Class. If that were to occur, the class would not be entitled to any statutory

18  damages, as statutory damages are only available for willful violations of the act.

19  *See* 15 U.S.C. § 1681n(a)(1)(A). The only court of appeals to confront the issue of

20  Account Review Inquiries on closed accounts is the Eleventh Circuit in *Levine*. The

21  court of appeals held in *Levine* that there could be no willful violation of the

22  permissible purpose provisions of the FCRA because the statute did not distinguish

23  between open and closed accounts. Therefore, interpreting the FCRA to permit

24  Account Review Inquiries on closed accounts was not "objectively unreasonable."

25  554 F.3d at 1318-19. The *Levine* court also held that "*Safeco* makes clear that

26  evidence of subjective bad faith cannot support 'a willfulness finding . . . when the

27  company's reading of the statute is objectively reasonable.'" *Id.* at 1319 (citations

28

HYDE & SWIGART
Consumer Protection Attorneys

1  omitted). These cases demonstrate that the probability of success in this case could

2  be considered low due to the many legal obstacles to overcome on the merits.

3  ## 2.   The Amount Offered In Settlement

4  As mentioned above, the Revised Settlement Agreement required Defendant

5  to provide a Settlement Fund of $1,645,000. Agr. ¶ 37. Under the Addendum,

6  BANA agreed to pay each of the Affected Settlement Class Members who makes a

7  valid claim the amount that each of the Original Settlement Class Members would

8  have received under the original settlement. *See* Addendum ¶ 9. Each valid and

9  approved claim is entitled to a *pro rata* share of the Settlement Fund, after

10  administrative costs, a service award to the Class Representative, and attorneys'

11  fees and costs are deducted. Agr ¶ 69. This is an all-in, non-reversionary settlement

12  and all uncashed checks will be distributed to a *cy pres* recipient to be approved by

13  the Court. Agr ¶ 75. As there are 114,512 valid claims thus far (McComb Decl., ¶

14  19), the individual recovery to the Class Members is approximately $4.06.

15  The range of recovery upon proof of a willful violation of the FCRA is $100

16  to $1,000. The range of possible recovery must take into account the likelihood of

17  success on the merits. The Court should not evaluate the adequacy of this

18  Settlement against some theoretically available judgment, but against what Plaintiff

19  could reasonably expect to recover. As previously discussed, there is a significant

20  chance that Plaintiffs could not establish that Defendant's actions were willful and

21  not merely negligent.

22  It is well-settled that a proposed settlement may be accepted where the

23  recovery represents a fraction of the maximum potential recovery. *See e.g.*, *Nat'l*

24  *Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well

25  settled law that a proposed settlement may be acceptable even though it amounts to

26  only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*,

27  225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement

28

HYDE & SWIGART
Consumer Protection Attorneys

1   constitutes a relatively small percentage of the most optimistic estimate does not, in

2   itself, weigh against the settlement; rather, the percentage should be considered in

3   light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459

4   (approving a settlement that comprised one-sixth of plaintiffs' potential recovery).

5           As the *Linder* Court explained, "…it is firmly established that the benefits of

6   certification are not measured by reference to individual recoveries alone. Not only

7   do class actions offer consumers a means of recovery for modest individual

8   damages, but such actions often produce several salutary by-products, including a

9   therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to

10  legitimate business enterprises by curtailing illegitimate [conduct], and avoidance

11  to the judicial process of the burden of multiple litigation involving identical

12  claims." *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) (internal

13  quotations omitted).

14          The Ninth Circuit found that the district court did not abuse its discretion in

15  approving payment of $15 per claiming class member (.02% of $750) where there

16  were long odds of winning the case. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939,

17  943-44 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, No. 13-16819, 2016

18  U.S. App. LEXIS 518 (9th Cir. Jan. 6, 2016). Moreover, the Ninth Circuit

19  specifically noted that $15 received by class members who filed claims was

20  reasonable given the "minimal (if any) harm" suffered by the plaintiffs. 2016 U.S.

21  App. LEXIS 518, at *1. The Ninth Circuit also noted that awarding $750 in

22  available statutory damages per claimant would implicate due process concerns. *Id.*

23          A similar situation exists here. Plaintiff faced significant litigation risks, and

24  Plaintiff and the Settlement Class Members suffered no legally cognizable actual

25  harm. Thus, the $1,802,998.58 represents true value to the class.

26          The relief afforded to the Class Members here is in line with an almost

27  identical action involving Chase Bank. *Duncan v. JPMorgan Chase Bank, N.A.*,

28

HYDE & SWIGART
Consumer Protection Attorneys

1   W.D. Tex Case No. 5:14-cv-00912-FB. That case also had an unusually high claims

2   rate, specifically 22.28%. *Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL

3   4419472, *6. The unexpectedly high claims rate let to a smaller payment than

4   anticipated. Class Members in Chase received less than $9 a person. *Id.* at *16, See

5   also, *Chase v. JPMorgan Chase Bank, N.A.*, W.D. Tex Case No. 5:14-cv-00912-

6   FB, Dkt. No. 93 (June 20, 2016) (Judge Biery's Amended Order Accepting In Part

7   memorandum and Recommendation of the United States Magistrate Judge).

8          The only other common fund FCRA impermissible pull settlement counsel is

9   aware of was for a much smaller class size. *See King v. United SA Fed. Credit*

10  *Union*, 744 F.Supp.2d 607 (W.D. Tex. 2010) (establishing a common fund of

11  $500,000 for a class of 7,000 in a similar case involving a FCRA account review

12  class action). All other known class action account review cases that have settled

13  have provided non-cash relief, including short term credit monitoring, credit scores,

14  or other "coupon-type" relief. *See, e.g.*, *Barel v. Bank of America*, 255 F.R.D. 393,

15  402 (E.D. Pa. 2009) (credit report monitoring); *Nienaber v. Citibank*, No. Civ. 04-

16  4054 (S.D.) (credit report monitoring); *Perry v. FleetBoston Corp.*, 229 F.R.D. 105,

17  110 (E.D. Pa. 2005) (two credit reports and scores); *Keener v Sears,* 03-cv-1265

18  (C.D. Cal) (Coupon for Sears store products).

19          Additionally, this dollar amount is comparable to amounts that have been

20  approved in Telephone Consumer Protection Act cases, where the strict liability

21  statute allows $500-$1,500 in statutory damages per TCPA violation. *See Rose v.*

22  *Bank of Am. Corp.*, 2014 U.S. ($20.00); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,

23  11-md-2261 (S.D. Cal.) Dist. LEXIS 121641 (N.D. Ill. 2014) ($15.00; or, $20.00

24  voucher); *Kazemi v. Payless Shoesource, Inc.*, 09-cv-5142 (N.D. Cal.) ($25.00

25  voucher); *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C

26  10064 MDL No. 2416 (N.D. Ill. 2015) ($34.60). Therefore, the estimated recovery

27  provided by this settlement is in line with similar consumer class action settlements.

28

1

2    **3.    Class Members were provided with the best notice possible,**
3         **which afforded them an opportunity to choose whether to**
         **participate in the Settlement.**

4         Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the

5    court must direct to class members the "best notice practicable" under the

6    circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be

7    "actually received." *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994).

8         According to the Claims Administrator, direct mail notice was provided to

9    586,801 Class Members (526,627 Group 1 Class Members and 60,174 Group 2

10   Class Members). 63,717 of the notices were returned as undeliverable, and the

11   Claims Administrator was able to locate a new address for 45,447 of the class

12   members. (McComb Decl., ¶ 12). Therefore, approximately 96.9% of the total class

13   received notice of the settlement via direct mail, which satisfies due process. *See*

14   Federal Judicial Center's Judges' Class Action Notice and Claims Process

15   Checklist and Plain Language Guide, at p. 3 (2010) (recognizing that a reach of

16   between 70-95% is reasonable); *see also Wilson v. Airborne, Inc*., 2008 U.S. Dist.

17   LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of

18   settlement where measurements used to estimate notice reach suggested that 80% of

     adults learned of the settlement).

19        This is a consumer case and consequently subject to lower claims rates than

20   other types of cases. *See e.g.*, *In re Mego Fin'l Corp. Sec. Litig*., 213 F. 3d 454, 459

21   (9th Cir. 2000); *Sylvester v. CIGNA Corp*., 369 F. Supp. 2d. 34, 44 (D. Me. 2005)

22   (Signal, C.J.) ("'Claims made' settlements regularly yield response rates of 10

23   percent or less.")). Usually, 3-5% of the eligible class members will submit valid

24   claims during the settlement process.  *See Forcellati v. Hyland's Inc*., 2014 WL

25   1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("[T]he prevailing rule of thumb with

26   respect to consumer class actions is [a claims rate of] 3-5 percent."); and,

27   *Ferrington v. McAfee, Inc*., 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012)

28

HYDE & SWIGART
Consumer Protection Attorneys

1   (same). However, this case, with a valid claims rate of approximately 19.52%, is

2   significantly higher than average. The high claims rate indicates the Class was

3   given sufficient notice, understood the settlement, and approved the settlement.

4   **4.    The Extent of Discovery Completed**

5   Although many of the facts alleged in the complaint were not in dispute, a

6   significant amount of discovery still took place. Class Counsel performed significant

7   factual investigation prior to bringing the action, and, Class Counsel conducted

8   extensive written discovery. Specifically, Plaintiff Pastor served on Defendant

9   written discovery consisting of 18 requests for admission, 14 interrogatories, and 27

10  document requests. McGlothlin Decl., ¶ 6. Furthermore, Class Counsel met and

11  conferred with Defendant on several discovery disputes. McGlothlin Decl., ¶ 7.

12  Thus, the litigation here had reached the stage where "the parties certainly have a

13  clear view of the strengths and weaknesses of their cases." *In re Warner*

14  *Communications*, 618 F. Supp. at 745.

15  Once the parties agreed to a framework of a settlement, Class Counsel then

16  took a Fed. R. Civ. P. 30(b)(6) confirmatory deposition as well as sent a second set of

17  written discovery. McGlothlin Decl., ¶ 8. Class Counsel participated in protracted

18  negotiations including a mediation before Judge Edward A. Infante (Ret.), which

19  ultimately secured a nationwide settlement for the benefit of the Class. Kazerounian

20  Decl., ¶ 5.

21  Considering that two of the main disputed issues between the parties are legal

22  (*i.e.,* were Defendant's actions willful or merely negligent; and is a class action

23  maintainable under Fed. R. Civ. P. 23?), and not factual in nature, the parties have

24  exchanged sufficient information to make an informed decision about settlement.

25  *See Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998).

26  **5.    The Experience And Views of Class Counsel**

27  "The recommendations of plaintiff's counsel should be given a presumption

28

1    of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979).

2    The presumption of reasonableness in this action is fully warranted because the

3    settlement is the product of arm's length negotiations conducted by capable,

4    experienced counsel.  *See M. Berenson Co.,* 671 F. Supp. at 822; *Ellis,* 87 F.R.D. at

5    18 ("that experienced counsel involved in the case approved the settlement after

6    hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class*

7    *Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Lit.,* Fourth § 30.42.

8        It is the considered judgment of Class Counsel experienced in consumer class

9    action litigation that this settlement is a fair, reasonable and an adequate settlement

10   benefiting the Class. Kazerounian Decl., ¶¶ 8 and 13; Swigart Decl., ¶¶ 8 and 13;

11   McGlothlin Decl., ¶¶ 10 and 15.

12       This Settlement was negotiated without collusion by experienced and capable

13   Class Counsel who now recommend its approval. *See* Recitals to Agr.; Kazerounian

14   Decl., ¶ 8. Significantly, the Settlement was reached with the assistance of Judge

15   Edward A. Infante (Ret.).  Given their experience and expertise, Class Counsel are

16   well-qualified to not only assess the prospects of a case, but also to negotiate a

17   favorable resolution for the class. Class Counsel have achieved such a result here in

18   this FCRA class action, and unequivocally assert that the proposed Settlement

19   should receive final approval. Kazerounian Decl., ¶ 8; Swigart Decl., ¶ 8;

20   McGlothlin Decl., ¶ 10.

21       **6.    The Reaction of Class Members To The Settlement**

22       The fact that there are no objections and only 33 timely requests for

23   exclusion (McComb Decl., ¶ 17) is important in evaluating the fairness,

24   reasonableness and adequacy of the settlement – which supports approval of the

25   settlement here. *See Steinfeld v. Discover Fin. Servs.,* 2014 U.S. Dist. LEXIS

26   44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9

27   class members, and 239 out of the approximately 8 million class members chose to

28

1   opt out); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015)

2   ("Upon considering the high rate of Class Member claims and the relatively low

3   number of requests for exclusion, the Court finds the reaction of the Class to the

4   Settlement favors approval of the Settlement."); *Stemple*, 2016 U.S. Dist. LEXIS

5   157207 at *7-8 (finding the lack of objections supported approval of the TCPA

6   settlement). Thus, there has been no resistance to the Settlement.

7

## VII.   CONCLUSION

8         In sum, the parties have reached this Settlement following extensive arms'

9   length negotiations before Hon. Edward A. Infante (Ret.). The Settlement is fair

10  and reasonable to the Class Members who were afforded notice that complies with

11  due process. For the foregoing reasons, Plaintiffs respectfully request the Court:

12  • Grant final approval of the proposed settlement;

13  • Order payment from the settlement proceeds in compliance with the Court's

14      Preliminary Approval Order and the Agreement;

15  • Grant the Motion For Attorney's Fees, Costs and Incentive Payments;

16  • Enter the proposed Final Judgment and Order of Dismissal with Prejudice

17      submitted herewith; and,

18  • Retain continuing jurisdiction over the implementation, interpretation,

19      administration and consummation of the Settlement.

20

21  Dated: July 20, 2018                      **HYDE & SWIGART**

22

23                                      By:  /s/ David McGlothlin

24                                           David McGlothlin, Esq.

25                                           Class Counsel

26

27

28